IN THE COURT OF APPEALS
AT KNOXVILLE

| | | |
|---|---|---|
| ANTHONY KEITH ELDRIDGE | ) | SULLIVAN COUNTY |
| | ) | 03A01-9904-CH-00146 |
| Plaintiff-Appellant | ) | |
| | ) | |
| | ) | |
| v. | ) | HON. RICHARD E. LADD, |
| | ) | CHANCELLOR |
| | ) | |
| JULIA EDITH ELDRIDGE | ) | |
| | ) | AFFIRMED IN PART, |
| Defendant-Appellee | ) | MODIFIED IN PART and |
| | ) | REMANDED |

H. WAYNE GRAVES OF JOHNSON CITY FOR APPELLANT

MICHAEL MAY OF KINGSPORT FOR APPELLEE

O P I N I O N

Goddard, P.J.

This is an appeal from the Chancery Court's visitation order which requires the minor daughter, Taylor Eldridge, to visit overnight with her mother. Anthony Eldridge, Plaintiff-Appellant, raises the following issue:

> Should, under the circumstances of this case, Taylor Eldridge be required to visit overnight with her mother in the presence of her mother and her lesbian partner, Lisa Franklin?

The trial court ordered overnight visitation without prohibiting Ms. Franklin's presence.

On July 24, 1992, Anthony Eldridge was granted an absolute divorce from Julia Eldridge for inappropriate marital conduct. The parties entered a Marital Dissolution Agreement which provided for joint custody of their minor daughters, Andrea and Taylor Eldridge. For two years, the joint custody arrangement was amicable. Beginning in late 1994, the parties could not agree on Ms. Eldridge's visitation rights. On November 21, 1994 and February 16, 1995, Ms. Eldridge moved the Chancery Court to set a specific visitation schedule. Mr. Eldridge responded to these motions by asking the Court to award sole custody of the two minor children to him. On July 17, 1995, the Court awarded sole custody of the two minor children to Mr. Eldridge. The Court ordered the parties and the children to seek counseling. Dr. James Granger became the first counselor and Special Master to the Court on July 26, 1995. Dr. Granger was unsuccessful in having the parties reach an agreement regarding Ms. Eldridge's visitation schedule.

On May 10, 1996, the Court appointed a Guardian ad litem who filed a report with the Court. On September 13, 1996, the Court set a specific visitation schedule which

included overnight visitation every other Saturday night through Sunday.  Ms. Eldridge filed a motion on May 20, 1997, to extend the overnight visitation to include Friday nights, holidays and summer vacation.  Mr. Eldridge opposed expanded overnight visitation.  On June 25, 1997, the Court changed the visitation schedule by ordering overnight visitation every other Friday night through Saturday evening.  The parties continued having problems with the visitation schedule.

Dr. Judy Millington began counseling the parties and the minor children in August 1996.  Dr. Millington, as Special Master to the Court, made recommendations regarding visitation.  According to her recommendations, Taylor Eldridge needed to extend visitation with Ms. Eldridge because a strong mother-child relationship is in the best interests of Taylor Eldridge.  In Dr. Millington's report filed June 30, 1997, she suggested that overnight visitation every other weekend should be two nights instead of one night.  In the addendum to this report, Dr. Millington stated: "on the continuum the best for Taylor and Andrea would be to have visitation without Lisa present, because the sexual orientation and modeling behavior issues become less obvious and so less of an issue parent-to-child in the future than it otherwise might be."  However, Dr. Millington never made a recommendation to the Court regarding Ms. Franklin's presence during Taylor Eldridge's overnight visitation with Ms. Eldridge.  Instead, Dr. Millington deferred to the Court for a decision on Ms. Franklin

's presence during overnight visitation.

A hearing was held on October 8, 1998 to resolve the visitation problems. At the hearing, Julia Eldridge testified that she and Lisa Franklin had been together for almost five years. The house where Ms. Eldridge and Ms. Franklin live is rented in Ms. Franklin's name alone. Ms. Eldridge testified that Ms. Franklin maintained a separate bedroom and there had been no sexual relationship between them for over a year prior to the hearing. On cross-examination, Ms. Eldridge testified that neither she nor Ms. Franklin were dating anyone else. Ms. Eldridge testified that she and Ms. Franklin were not physically affectionate in Taylor's presence.

Lisa Franklin testified that she had maintained a separate bedroom for three months prior to the hearing. Ms. Franklin testified that Taylor Eldridge acted happy with Ms. Eldridge in her presence. Ms. Franklin testified that she had a good relationship with Taylor Eldridge.

Mr. Eldridge testified that overnight visitation with Ms. Franklin present was not in Taylor Eldridge's best interests. According to Mr. Eldridge, Taylor's emotional well-being was affected by her exposure to the relationship between Ms. Eldridge and Ms. Franklin because this type of relationship was contrary to Taylor's moral beliefs. Mr. Eldridge testified that Taylor did not want overnight

visitation with Ms. Franklin present.

Dr. Millington testified that she had not observed any adverse effects on Taylor since she began overnight visitation with Ms. Eldridge in Ms. Franklin's presence. Dr. Millington described Taylor's behavior around Ms. Eldridge as very positive. Dr. Millington testified that "for her best interest overnight would not be required, but on the other hand that I didn't really think overnight would harm her because I don't think she's going to see anything at Julie's."

After the October 8, 1998 hearing, another visitation schedule was set which included overnight visitation. Mr. Eldridge appeals the Court's November 19, 1998 order setting visitation.

The trial court possesses broad discretion in determining a visitation arrangement. See Suttles v. Suttles, 748 S.W.2d 427, 429 (Tenn. 1988). We will not disturb the trial court's visitation order unless there is an abuse of discretion.
See Suttles, 748 S.W.2d at 429. We find the trial court abused its discretion by not prohibiting Ms. Franklin's presence during the court-ordered overnight visitation.

This Court addressed the issue raised by Mr.

Eldridge in <u>Dailey v. Dailey</u>, 635 S.W.2d 391 (Tenn. Ct. App. 1982). In <u>Dailey</u>, the Court raised the issue of overnight visitation with the homosexual mother upon its own motion. <u>See</u> <u>Dailey</u>, 635 S.W.2d at 395. Finding "the proof *in this record* could provide nothing but harmful effects on his life in the future," the Court modified Ms. Dailey's visitation privileges with her minor child. <u>Dailey</u>, 635 S.W.2d at 396 (emphasis added). Visitation was prohibited from occurring in the home where Ms. Dailey lived with another woman, Peggy Maynard, or in the presence of Ms. Maynard or "any other homosexual with whom the Respondent may have a lesbian relationship." <u>Dailey</u>, 635 S.W.2d at 396.

In modifying the visitation order, the <u>Dailey</u> Court relied heavily upon the proof established in the record. The proof showed Ms. Dailey and Ms. Maynard were extremely affectionate toward one another in the minor child's presence. <u>Dailey</u>, 635 S.W.2d at 393. Additional proof showed the child was placed in bed with Ms. Dailey and Ms. Maynard while they embraced in the nude. <u>Dailey</u>, 635 S.W.2d at 393. An expert testified that harmful effects would occur from the minor child being reared by the homosexual mother. <u>Dailey</u>, 635 S.W.2d at 393-94. Accordingly, the Court changed custody from the mother to the father and modified the mother's visitation privileges.

The facts of this case do not rise to the level of

harmful behavior displayed by the mother in <u>Dailey</u>.  Ms. Eldridge and Ms. Franklin show no affection toward one another in the presence of Taylor Eldridge.  In restricting overnight visitation, we do not rely on the fact that Ms. Eldridge is a lesbian.  The courts of Tennessee commonly place reasonable restrictions on the visitation rights of heterosexual parents who engage in sexual activity with partners with whom they are not married.  <u>See</u> <u>Price v. Price</u>, an unreported opinion of this Court, filed in Jackson on June 20, 1997 (prohibiting both parents from having an overnight guest with whom the parent is sexually involved while exercising overnight visitation with minor child); <u>Edwards v. Edwards</u>, 501 S.W.2d 283 (Tenn. Ct. App. 1973)(prohibiting overnight visitation with mother who was involved in extramarital relationship with a man).

We affirm the Chancery Court's order requiring overnight visitation between Taylor and Julia Eldridge, but we modify the order by prohibiting the presence of Lisa Franklin during the overnight visitation.  The judgment of the Trial Court as modified is affirmed and the cause remanded for such further proceedings, if any, as may be necessary and collection of costs below.  Costs of appeal are adjudged against Ms. Eldridge.

_____
_____ Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Charles D. Susano, Jr., J.